UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MUSID MUSLEH,

              Plaintiff,                         Case No. 15-cv-13252

v.                                       Paul D. Borman
                                            United States District Judge

AMERICAN STEAMSHIP
COMPANY,

              Defendant.
_____/

## OPINION AND ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 17) AND (2) DENYING PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF NO. 18)

This action involves Plaintiff's claim that he was improperly denied unearned wages after he was declared fit for duty ("FFD") following an injury suffered while he was serving as a seaman for Defendant American Steamship Company ("ASC") on the Great Lakes aboard the M/V St. Clair. ASC responds that Plaintiff was not qualified to return to work on an ASC vessel because he failed to obtain a Vessel Personnel and Designated Security Duties ("VPDSD") endorsement before returning to work, a requirement imposed by ASC on all seaman who, like Plaintiff, come to ASC through the Seafarer's International Union ("SIU").

Plaintiff now moves for summary judgment on Count I of the Complaint for

1

unearned wages and Defendant moves for summary judgment on both Counts I and II. The Court held a hearing on the motions on August 14, 2017. For the reasons that follow, the Court DENIES Plaintiff's motion and GRANTS Defendant's motion.

## I. FACTUAL BACKGROUND

Although the parties have filed cross-motions for summary judgment, requiring the Court to view the facts separately in the light most favorable to each of them, the facts are largely undisputed. On December 26, 2014, Plaintiff injured his shoulder and his thumb while working for ASC as a seaman aboard the M/V St. Clair. (ECF No. 18, Ex. 2, Pl.'s Dep. 13:22-23; 39:16-40:3.) On June 16, 2015, Plaintiff was issued a notice by Jiab Suleiman, D.O. stating that Plaintiff "is able to return to work with no restrictions," and was FFD at that time. (ECF No. 18, Ex. 3, Def.'s Answers to Pl.'s Interrogatories ("Interrogs.") and Requests for Admission ("RFAs") RFA No. 3, PgID 217; Pl.'s Dep. 13:22-14:1.)[1]

Plaintiff sent his FFD slip to ASC and a few days later took the FFD to the SIU, seeking to return to work as a seaman for ASC. Don Thornton, a representative of the SIU, explained to Plaintiff that he needed to obtain a VPDSD certificate to work as

---

[1] Throughout the period of time that he was not fit for duty due to his December 26, 2014 injury, and at least up until the day of his deposition in March, 2016, Plaintiff was receiving Social Security Disability ("SSD") benefits based upon a 2013 application for SSD benefits due to a number of different health concerns unrelated to the December 26, 2014 injury. (Pl.'s Dep. 30:22-33:3, 36:17-38:1.)

a seaman for ASC, and gave Plaintiff a card with the name of a retired United States Coast Guard ("USCG") officer, Steve Johnson, who could help Plaintiff to obtain the VPDSD certificate. Plaintiff called Johnson who informed Plaintiff that he did not need a VPDSD to work on the Great Lakes. (Pl.'s Dep. 14:6-17:25; 18:12-16; 47:23-49:7.) Plaintiff also called Mary Banks, who was the Human Resources administrator for ASC, who asked him why he had not come back to work and when he explained to her what he had been told by Mr. Thornton, Ms. Banks said she would call him back – but she did not call him back. (Pl.'s Dep. 15:6-16:1; 53:1-19.)

After speaking with Mr. Johnson, who informed Plaintiff that he did not need a VPDSD to work on the Great Lakes, Plaintiff called Mr. Thornton back and told him that Mr. Johnson stated that Plaintiff did not need a VPDSD certification. Thornton responded that regardless of what Mr. Johnson said to Plaintiff, ASC required the VPDSD endorsement in order to return to work for ASC. Plaintiff asked Thornton how Plaintiff was supposed to pay for the class, and for transportation to the site of the class. Thornton told Plaintiff it was at Plaintiff's own expense, and neither ASC nor the SIU would pay the cost for Plaintiff. Plaintiff explained that he didn't have the money and Mr. Thornton said it was up to Plaintiff to pay and there was nothing Mr. Thornton could do. (Pl.'s Dep. 47:23-52:25.) Ultimately, ASC provided Plaintiff with a letter ("the ASC letter") that Plaintiff presented to the USCG in May, 2016, to

attempt to obtain some type of waiver of the VPDSD course requirement, but the USCG informed Plaintiff that the ASC letter was insufficient and that the VPDSD certificate would be required.  (Pl.'s Mot. Exs. D, E.)

Plaintiff had no further contact with anyone at ASC, or with Mr. Thornton of the SIU or Mr. Johnson of the Coast Guard and never contacted the USCG, before retaining counsel and filing this lawsuit.  (Pl.'s Dep. 53:1-55:14, 56:11-25.)  Plaintiff did not seek work from any other company and never investigated whether there were other companies who would have hired him without a VPDSD endorsement.  (Pl.'s Dep. 59:16-60:12.)

ASC admits that the VPDSD endorsement for merchant mariners is not a regulatory requirement of the USCG for vessels serving on the Great Lakes.  (ECF No. 18, Pl.'s Mot. Ex. 3, RFA No. 1, PgID 215.)  The VPDSD endorsement is, however, a requirement that ASC has imposed on all mariners serving on ASC vessels and the practice has been agreed to by the SIU, and continues to be a term of employment for all mariners coming to ASC from the SIU.  (RFA No. 2, PgID 216; Pl.'s Mot. Ex. 4, Jan. 5, 2017 Deposition of Kevin Patrick McMonagle 48:11-50:55.)  Kevin McMonagle, the Vice President of Operations for ASC, instructed the SIU that mariners dispatched by the SIU would be required by ASC to have a VPDSD endorsement.  The SIU expressed no disagreement with this requirement, which was

not required to be in the SIU/ASC collective bargaining agreement ("CBA"). ASC considered VPDSD to be a term or condition of employment for all seaman referred to ASC by the SIU. (McMonagle Dep. 11:21-12:20, 23:3-14, 24:15-25:3, 70:12-17.)

Indeed, notification of the VPDSD requirement appeared in an SIU publication sent to all mariners, including Plaintiff, as early as November, 2014, and was being imposed and enforced long before Plaintiff received his FFD slip in June, 2015. Plaintiff acknowledged that he was working for ASC in November, 2014, when the VPDSD certification requirement was announced. (Pl.'s Dep. 61:22-63:18.) ASC did create the ASC letter that it presented on request to its seamen seeking the VPDSD, which the seamen could present to the USCG explaining that an employed seaman was qualified for the VPDSD by a specific longevity with ASC and a specific number of hours on security detail in the preceding three years. (McMonagle Dep. 38:16-39:23, 41:1-8.) ASC hoped, but could not guarantee in every case, that the ASC letter would satisfy the USCG regarding an individual seaman's qualification for the VPDSD endorsement. McMonagle was unaware whether Plaintiff met the criteria in the ASC letter. (McMonagle Dep. 42:1-13, 44:3-45:3, 48:2-9.)

McMonagle did not know anything about Plaintiff or his difficulties in obtaining the VPDSD endorsement prior to this litigation and could not recall any conversation with Ms. Banks regarding Plaintiff's attempts to acquire his VPDSD.

He had no information regarding Plaintiff's contact with the USCG regarding his VPDSD endorsement and has no knowledge whether a seaman can apply for a VPDSD endorsement while on Not Fit For Duty ("NFFD") status, although he generally is aware that seamen on NFFD status are not eligible for site training at SIU expense. (McMonagle Dep. 15:15-16:3, 54:20-55:17, 57:2-15, 64:7.)

McMonagle testified that, although there was nothing preventing ASC from doing so, ASC has made the decision not to make any exceptions to the VPDSD endorsement requirement. ASC has provided the same ASC letter (Pl.'s Mot. Ex. 5, May 4, 2016 Letter from ASC to USCG re: Musid A. Musleh) that it provided to Plaintiff for presentation to the USCG to other seaman employed by ASC who attempted to obtain the VPDSD endorsement. McMonagle has not spoken to the USCG regarding Plaintiff's case and does not know why the USCG imposed additional requirements on Plaintiff or why the ASC letter was not sufficient in Plaintiff's case to obtain a waiver of the VPDSD course requirement. (Pl.'s Mot. Ex. 6, June 24, 2016 Letter from USCG to Musid Musleh). (McMonagle Dep. 64:8-68:22.) The USCG June 24, 2016 Letter to Plaintiff explains that it had received his application on June 9, 2016, and that "[a]fter a comprehensive professional qualifications evaluation [his] application request is pending and in need of additional supporting information and/or documentation." (Pl.'s Mot. Ex. 6, PgID 262.) The

June 24, 2016 Letter from the USCG explains in an attachment that:

> VPDSD/Security Awareness -
>
> > To qualify for an STCW endorsement as Vessel Personnel with Designated Security Duties (VPDSD), you must provide a certificate or letter signed by a company official OR certificate of completion from a U.S. Coast Guard accepted or approved course that meets the requirements of 33 CFR 104.220. The letter submitted does not meet the requirements in 33 CFR 104.220.
>
> References: 46 CFR 12.625; 33 CFR 104.220; NVIC 21-14.

(Pl.'s Mot. Ex. 6, PgID 263.) There is no evidence in the summary judgment record regarding the exact basis for the USCG's determination regarding Plaintiff's qualifications for the VPDSD endorsement.

46 C.F.R. 12.625, cited as a reference in the USCG's June 24, 2016 Letter to Plaintiff, provides as follows:

> **§ 12.625 Requirements to qualify for an STCW endorsement as vessel personnel with designated security duties.**
>
> (a) An applicant for an STCW endorsement as vessel personnel with designated security duties must—
>
> > (1) Present satisfactory documentary evidence, such as a certificate or letter signed by a company official, or a certificate of completion from a Coast Guard-accepted or Coast Guard-approved course, of meeting the requirements in 33 CFR 104.220;
> >
> > (2) Meet the physical examination requirements in 46 CFR Part 10, subpart C; and

(3) Meet the safety and suitability requirements and the National Driver Registry review requirements in § 10.209(e) of this subchapter, unless the applicant has met these requirements within the previous 5 years in connection with another endorsement.

(b) Until March 24, 2014, seafarers will be able to apply for an endorsement as vessel personnel with designated security duties by—

(1) Having completed approved seagoing service with designated security duties, for a period of at least 6 months in total during the preceding 3 years;

(2) Having performed security functions considered to be equivalent to the seagoing service required in paragraph (b)(1) of this section; or

(3) Successfully completing Coast Guard-accepted or Coast Guard-approved training.

46 C.F.R. § 12.625.

33 C.F.R. § 104.220, also cited by the USCG in the June 24, 2016 Letter to

Plaintiff,  provides as follows:

**§ 104.220 Company or vessel personnel with security duties.**

Company and vessel personnel responsible for security duties must maintain a TWIC, and must have knowledge, through training or equivalent job experience, in the following, as appropriate:

(a) Knowledge of current security threats and patterns;
(b) Recognition and detection of dangerous substances and devices;
(c) Recognition of characteristics and behavioral patterns of persons who are likely to threaten security;
(d) Techniques used to circumvent security measures;

8

(e) Crowd management and control techniques;
(f) Security related communications;
(g) Knowledge of emergency procedures and contingency plans;
(h) Operation of security equipment and systems;
(i) Testing and calibration of security equipment and systems, and their maintenance while at sea;
(j) Inspection, control, and monitoring techniques;
(k) Relevant provisions of the Vessel Security Plan (VSP);
(l) Methods of physical screening of persons, personal effects, baggage, cargo, and vessel stores; and
(m) The meaning and the consequential requirements of the different Maritime Security (MARSEC) Levels;
(n) Relevant aspects of the TWIC program and how to carry them out.

33 C.F.R. § 104.220.

McMonagle testified that with respect to the requirements listed in the referenced CFR provisions cited in the June 24, 2016 Letter from the USCG to Plaintiff, ASC was not prepared to certify all of them with respect to Plaintiff. (McMonagle Dep. 69:10-70:16.)

## II.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may file a motion for summary judgment "at any time until 30 days after the close of all discovery," unless a different time is set by local rule or court order.  Fed. R. Civ. P. 56(b).  Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P.

56(a).  "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  *See also Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted).  A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial.  *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).  In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party.  *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).  "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether

it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 324. "The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. The plaintiff must present more than a mere scintilla of the evidence. To support his or her position, he or she must present evidence on which the trier of fact could find for the plaintiff." *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal quotation marks and citations omitted). In doing so, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires the non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*,

106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment). "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A).

"Rule 56(e)(2) leaves no doubt about the obligation of a summary judgment opponent to make [his] case with a showing of facts that can be established by evidence that will be admissible at trial. . . . In fact, '[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.' Rule 56(e) identifies affidavits, depositions, and answers to interrogatories as appropriate items that may be used to support or oppose summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." *Celotex*, 477 U.S. at 323-34.

When the Court is faced with cross-motions for summary judgment, each motion must be evaluated on its merits and in light of the applicable burdens at the summary judgment stage:

The fact that the parties have filed cross motions for summary judgment does not automatically justify the conclusion that there are no facts in dispute. *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003) ("The fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate."). Instead, the Court must apply the well-recognized summary judgment standards when deciding such cross motions: the Court "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc*., 336 F.3d 503, 506 (6th Cir. 2003).

\*      \*      \*

In a defensive motion for summary judgment, the party who bears the burden of proof must present a jury question as to each element of the claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc*., 936 F.2d 889, 895 (6th Cir.1991).

When the moving party also bears the ultimate burden of persuasion, the movant's affidavits and other evidence not only must show the absence of a material fact issue, they also must carry that burden. *Vance v. Latimer*, 648 F.Supp.2d 914, 919 (E.D. Mich. 2009); *see also Resolution Trust Corp. v. Gill*, 960 F.2d 336, 340 (3d Cir. 1992); *Stat–Tech Liquidating Trust v. Fenster*, 981 F.Supp. 1325, 1335 (D. Colo. 1997) (stating that where "the crucial issue is one on which the movant will bear the ultimate burden of proof at trial, summary judgment can be entered only if the movant submits evidentiary materials to establish all of the elements of the claim or defense"). The plaintiff therefore "must sustain that burden as well as demonstrate the absence of a genuine dispute. Thus, it must satisfy both the initial burden of production on the summary judgment motion—by showing that no genuine dispute exists as to any material fact—and the ultimate burden of persuasion on the claim—by showing that it would be entitled to a directed verdict at trial." William W. Schwarzer, et al., The Analysis and Decision of Summary

Judgment Motions, 139 F.R.D. 441, 477-78 (1992) (footnotes omitted).

*Ely v. Dearborn Heights School Dist. No. 7*, 150 F. Supp. 3d 842, 849-50 (E.D. Mich. 2015).

## III.   ANALYSIS

### A. The Timeliness of Plaintiff's Motion

On March 15, 2017, Plaintiff filed a motion for partial summary judgment which the Court struck, both because it was premature (before the close of discovery) and because it failed to indicate that Plaintiff sought concurrence. (ECF No. 16, Order Striking Plaintiff's Motion for Partial Summary Judgment.) On May 9, 2017, four days after the May 5, 2017 deadline for filing dispositive motions, Plaintiff filed the "Amended Motion for Partial Summary Judgment" that is presently before the Court. (ECF No. 18, Plaintiff's Amended Motion for Partial Summary Judgment.) The "Amended Motion" is identical to the stricken motion for partial summary judgment, attaching the same exhibits and relying on the same "controlling or most appropriate authority." The Amended Motion sets forth no new facts or argument in support of Plaintiff's request for summary judgment on his claim for unearned wages.

Defendant, as a threshold matter, asks the Court to deny Plaintiff's "Amended Motion," because it is untimely and because it seeks to "amend" a stricken motion. (ECF No. 22, Def.'s Resp. 6-7.) While the Court agrees with Defendant that the

Plaintiff's "Amended Motion" is untimely and is "styled" improperly, there is no real prejudice to the Defendant should the Court excuse these defects and consider the merits of the "Amended Motion." While the "Amended Motion" was filed four days after the dispositive motion deadline, and after Defendant had filed its motion for summary judgment, the "Amended Motion" is an exact copy of the earlier-filed and stricken motion. In other words, Plaintiff did not use the additional time to get a "preview" of Defendant's motion and adjust its arguments accordingly. Plaintiff's counsel submits that the failure to timely file the "Amended Motion" was an oversight and the facts bear this claim out. Accordingly, the Court construes Plaintiff's "Amended Motion" as a timely-filed Motion for Partial Summary Judgment and will consider it on the merits.

## B. Plaintiff's Claim for Unearned Wages[2]

Sometime in late 2013 or early 2014, ASC adopted and began to impose on all seamen seeking work with ASC a heightened security certification requirement – the VPDSD enhancement. It is undisputed that when Plaintiff was declared FFD and cleared to return to work six months after his injury, he sought new employment on a new voyage with ASC and was now subject to the VPDSD certification requirement. There is no evidence, or even a suggestion, that ASC was in any way targeting the Plaintiff or that ASC imposed the VPDSD requirement on Plaintiff discriminatorily or with any bad intent or ill will. As discussed *infra*, Plaintiff provides no authority to support the suggestion that ASC was legally obligated to make an exception to the

---

[2] Plaintiff appears to have abandoned, or at least offers no argument in support of, his claim for wrongful termination of maintenance benefits (Plaintiff does not appear to claim that ASC failed to fully pay cure benefits). Plaintiff's failure to address this claim at all in response to Defendant's motion for summary judgment, which addresses both claims, entitles Defendant to summary judgment on the wrongful termination of maintenance benefits. "Sixth Circuit jurisprudence is clear: a plaintiff is deemed to have abandoned a claim when []he fails to address it in response to a motion for summary judgment." *Matthews v. Massage Green LLC*, No. 14-vc-13040, 2016 WL 1242354, at *12 (E.D. Mich. March 30, 2016) (collecting cases). In any event, it is well established that maintenance and cure benefits are payable to "the point of maximum cure," which Plaintiff admits he reached as of June 16, 2015, when he was declared FFD. *Blainey v. American S.S. Co.*, 990 F.2d 885, 887 (6th Cir. 1993) ("A shipowner is liable to pay maintenance and cure to the point of maximum cure, that is, when the seaman's affliction is cured or declared to be permanent."). ASC had no legal obligation to continue maintenance payments to Plaintiff after he was "cured" and returned to FFD status on June 16, 2015. Plaintiff provides no authority or argument otherwise.

VPDSD requirement for the Plaintiff or that ASC was legally obligated to pay Plaintiff unearned wages while Plaintiff obtained his VPDSD enhancement.

The voyage on which Plaintiff suffered his injury ended on December 26, 2014, the date on which Plaintiff suffered his injury and the M/V St. Clair returned to port and unloaded its cargo. Although ASC continued to provide Plaintiff with maintenance and cure payments up until he was rendered FFD and ready to return to work, the law is clear that Plaintiff was no longer entitled to unearned wages once his last voyage for ASC, *i.e.* the voyage on which he was injured, had ended. That is to say, had Plaintiff been injured while in the midst of a lengthy voyage, he would have been entitled to unearned wages until that voyage ended, regardless of the fact that he became unable work during the voyage. Unearned wages are limited under admiralty law to the period of time that the seaman is unable to work while the voyage is ongoing. Because Plaintiff received wages up until the last day of the voyage, he was (and is) not entitled to additional unearned wages. The Sixth Circuit has recognized this general rule:

> Unlike maintenance and cure which may extend for a reasonable period beyond the expiration of the voyage until the point of maximum cure attainable has been reached, wages cease with the end of the voyage or the end of the engagement (whichever properly can be considered as the terminal point) and cannot extend beyond such period of time.

*Blainey v. American S.S. Co.*, 990 F.2d 885, 890 (6th Cir. 1993) (quoting 2 Martin J.

Norris, The Law of Seamen § 26.7 at 16–18 (4th ed. 1985) and citing 1B Ellen M. Flynn et al., Benedict on Admiralty § 52 (7th ed. 1993) (wages to end of voyage for foreign travel, to end of "employment period" for coastwise commerce)). "This distinction recognizes the fact that in contrast to voyages made to foreign lands, voyages in coastal and Great Lakes shipping are usually of very short duration." *Id*.

Although Plaintiff states in his Amended Motion that Plaintiff "was a long-term, permanent employee" of ASC, Plaintiff does not appear to be arguing that he had articles of engagement that entitled to him to unearned wages for a specific period of employment. Nor is there any evidence in the record to support the "permanent employee" designation, which counsel for Plaintiff admitted at the hearing did not in any event entitle Plaintiff to unearned wages beyond the end of the voyage. Indeed, it was revealed at the hearing that prior to the December 2014 voyage on which Plaintiff injured his shoulder, Plaintiff had not worked for ASC during the previous three years. "[I]n order for [Plaintiff] to establish that [he] was entitled to unearned wages beyond the end of a voyage, [he was] required to prove the existence of a definite period of employment that extended beyond the end of each voyage." *Blainey*, 990 F.2d at 891. Defendant submits that, as in *Blainey*, the Great Lakes voyage on which Plaintiff was injured lasted from loading port to unloading port, and ended on December 26, 2014, when Plaintiff was injured and thereafter left the ship

when it unloaded at port.  (ECF No. 17, Def.'s Mot. 14, PgID 154.)  Defendant states that, as in *Blainey*, nothing in the SIU collective bargaining agreement extended Plaintiff's employment period beyond the length of a particular voyage.  (*Id*.) Plaintiff does not present any contrary evidence on this point.  There is no evidence here of "seamen's articles [or] any other circumstances [that] created a definite period of employment beyond the voyage's end."  *Id*. It is undisputed that Plaintiff, without complaint, was not collecting unearned wages during the period of time after the voyage ended and before he was declared FFD and able to return to work.  Although Plaintiff received maintenance and cure benefits throughout this six month period, he did not receive and did not object to not receiving, unearned wages during this period.

Plaintiff reasons, however, that because ASC is responsible for Plaintiff's inability to work (through its imposition of the VPDSD requirement while Plaintiff was unemployed and NFFD), ASC now owes him unearned wages beginning from the date on which he was FFD and ready to seek employment with ASC.  In short, Plaintiff asks that ASC be compelled to waive the VPDSD certification requirement in Plaintiff's case or, alternatively, that ASC be compelled to pay Plaintiff unearned wages (presumably from the date on which he sought to return to work for ASC until the present) so that Plaintiff can afford to take the VPDSD course and obtain the VPDSD endorsement.  Unfortunately, Plaintiff provides no legal support for this

claim and no compelling argument for an equitable remedy. Plaintiff provides no evidence that ASC has granted any exceptions to its VPDSD certification requirement nor persuasive authority that ASC had any legal obligation to do so in his case. Plaintiff claims that he was placed in a "Catch-22" situation because he could not obtain the VPDSD certification required for his return to work because he could not afford to obtain the VPDSD certification while not working yet he could not return to work (for ASC) without the VPDSD certification. Plaintiff claims that "having caused" Plaintiff's continued unemployment through its newly enacted VPDSD requirement, ASC is "liable to pay Mr. Musleh unearned wages." (ECF No. 18, Pl.'s Amended Mot. 9, PgID 197.) Plaintiff concedes that the law does not support his request, characterizing this as "a case of first impression:"

> This may be a case of first impression: where a seaman is injured while in the service of the ship and when he returns fit-for-duty, his employer's arbitrary and inflexible rule bars him from working.

(ECF No. 18, Pl.'s Amended Mot. 9, PgID 197.) It is unclear what Plaintiff means by "in the service of the ship" as it appears undisputed that Plaintiff was not in the service of any ASC vessel after the voyage on which he was injured ended on December 26, 2014. In any event, his claim for unearned wages under these circumstances finds no support in the law.

Plaintiff concedes the generally recognized principle that a seaman is entitled

to wages "until the end of the voyage." (Pl.'s Amended Mot. 10, PgID 198) (citing *The Osceola*, 189 U.S. 158 (1903)). And Plaintiff appears to concede that his voyage on the M/V St. Clair indeed "ended" on December 26, 2014, when the vessel returned to port. Seeking to carve out an unprecedented exception for his circumstance, Plaintiff suggests that *Lamont v. United States*, 613 F. Supp. 588 (S.D.N.Y. 1985), stands for the following broad proposition: "A seaman is entitled to unearned wages for a period determined by either the length of the voyage, period of employment, or until the seaman is considered fit for duty." (Pl.'s Mot. 10, PgID 198.) But Plaintiff misrepresents the *Lamont* holding by leaving out critical language. The exact language from *Lamont* is as follows:

> It is well established that a shipowner has a duty to provide maintenance, wages, and cure to a "seaman who becomes ill or is injured while in the service of the ship." *Vella v. Ford Motor Co.*, 421 U.S. 1, 3, 95 S.Ct. 1381, 1382, 43 L.Ed.2d 682 (1975); *see Griffin v. Oceanic Contractors, Inc.*, 664 F.2d 36, 39 (5th Cir. 1981). The shipowner's duty derives from the hazardous nature of the seaman's work and is intended to encourage marine commerce. 421 U.S. at 3–4, 95 S. Ct. at 1382–1383. The responsibility for these benefits springs from the relationship of ship and seaman and not from the employment contract. *See Isthmian Lines, Inc. v. Haire*, 334 F.2d 521, 523 (5th Cir. 1964). Furthermore, the right of the seaman to unearned wages continues either through the end of the voyage (or the end of the contractual period of employment) or until the seaman becomes fit for duty, whichever **occurs** first. *See Griffin*, 664 F.2d at 39; *Vickers v. Tumey*, 290 F.2d 426, 434 (5th Cir. 1961).

*Lamont*, 613 F. Supp. at 590 (emphasis in original). The critical language that

Plaintiff omitted, "whichever occurs first," is of course fatal to his claim here because what occurred first in this case was the end of Plaintiff's voyage on the M/V St. Clair on December 26, 2014. Plaintiff does not appear to contest that this date was indeed the end of the voyage on which he suffered his injury, and thus the last date on which he was entitled to receive unearned wages under controlling admiralty law. It is true that the plaintiff in *Lamont* was awarded unearned wages *after* he was declared FFD but that is because the voyage on which he was injured – which was a nearly year-long voyage – had not yet ended. 613 F. Supp. at 592-93. Plaintiff suggests that *Lamont* stands for the broad proposition that a seaman is entitled to unearned wages when he, like the plaintiff in *Lamont*, is declared FFD. But *Lamont* stands for no such proposition and there is no parallel between Plaintiff's situation and that of the plaintiff in *Lamont*, who was declared FFD while his voyage had not yet ended.

Additionally, the plaintiff in *Lamont* immediately sought alternate work when he was denied the opportunity to return to his vessel when FFD, a fact that was of dispositive significance to the court in *Lamont*. As soon as the plaintiff in *Lamont* became FFD, he attempted to rejoin the vessel on which he suffered his injury as that vessel had not yet completed the voyage on which plaintiff had been working. 613 F. Supp. at 592. Plaintiff was denied the opportunity to rejoin his original voyage and immediately sought work on another vessel, which he was able to secure

approximately two months after he became FFD. *Id*. The issue in *Lamont* was whether the plaintiff was entitled to wages for the two month period between the time he became FFD and the time he was able to find alternate employment. The answer was "yes," both because his original voyage had not yet terminated and because he immediately sought employment after he became FFD:

> A minor question first arises as to whether Lamont may recover unearned wages for the April 20 [FFD date] through June 21 [new employment date] period. For the following reasons, I conclude that he may. The voyage terminated on August 18, 1981 but Lamont was declared fit for duty before that date. The parties have stipulated that on April 20, 1981, immediately after being declared fit for duty, Lamont unsuccessfully attempted to rejoin the Atlantic. On April 24, 1981, plaintiff registered with the union hiring hall in New York to obtain employment aboard another vessel. He obtained employment aboard the USNS EXPLORER commencing June 22, 1981. Thus, it is undisputed that as soon as plaintiff was declared fit for duty, he sought new employment.
>
> \*              \*              \*
>
> The same logic which dictates that an injured seaman be awarded wages until he is declared fit for duty mandates that he be awarded wages until he has obtained new employment, provided, of course, that he makes a good faith effort to obtain employment after his recovery. Thus, I find that Lamont is entitled to wages from April 20, 1981 through June 21, 1981.

613 F. Supp. at 592 (alterations added). The court in *Lamont* was not called upon to, and did not, reach the question of whether a seaman is entitled to unearned wages once declared FFD if his voyage has ended. Indeed, the *Lamont* court expressly

recognized that "the right of the seaman to unearned wages continues either through the end of the voyage (or the end of the contractual period of employment) or until the seaman becomes fit for duty, whichever occurs first."  This fundamental right of a mariner to such benefits is premised upon the understanding that the seaman "'ought not to be left in the lurch during the period of time that he has been assured a job,'" an important principle "'in all kinds of employment where the employee has a promise of a job for a fixed period,'" which is "'particularly important for a seaman who may be stranded in a foreign port.'"  *Lamont*, 613 F. Supp. at 592 (quoting *Warren v. United States*, 75 F. Supp. 836, 838 (D. Mass. 1948)).

None of these principles is compromised or offended by ASC's conduct here with respect to Plaintiff, whose "period[] of employment [is] measured by the duration of [his] individual voyage[]."  *Blainey*, 990 F.2d at 892.  Plaintiff's voyage had long since terminated on the date that he became FFD and it is undisputed that Plaintiff did not seek alternative employment once he found that he was not qualified to return to another job with ASC without first obtaining his VPDSD.

To survive Defendant's motion for summary judgment on his claim for unearned wages, Plaintiff had to produce some evidence or legal argument to establish either that ASC had no legal right to impose the VPDSD requirement on its seamen, or that ASC was legally obligated to make an exception in Plaintiff's case, or that

ASC was legally obligated to pay Plaintiff unearned wages after the conclusion of his voyage. Plaintiff proffers no such legal argument or evidence and has failed to create a genuine issue of material fact on any one of these issues. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim for unearned wages.

## IV.  CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Amended Motion for Partial Summary Judgment, and GRANTS Defendant's Motion for Summary Judgment on both Count I (unearned wages) and Count II (improper termination of maintenance and cure), and DISMISSES Plaintiff's Complaint WITH PREJUDICE. IT IS SO ORDERED.


s/Paul D. Borman_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  September 8, 2017

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 8, 2017.


s/Deborah Tofil_____
Case Manager